# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Weber and Hayes Y.       :
Weber                               :
                                    :
          v.                        :    No. 635 C.D. 2015
                                    :    Argued:  December 7, 2015
Clearfield County Tax Claim Bureau  :
and James Keller t/a James Keller   :
Logging                             :
                                    :
Appeal of:  James Keller            :


BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE LEADBETTER                          FILED:  January 7, 2016


          James Keller appeals from the order of the Court of Common Pleas of
Clearfield County granting the objections and exceptions of Michael and Hayes
Weber and vacating the tax sale of the Webers' property on September 12, 2014.
We affirm.

          The Webers' 1682-acre property is located in Huston Township,
Clearfield County at 1244 Hickory Road, Penfield, Pennsylvania.  The Webers
acquired the property as a gift from Michael Weber's parents in November 2012.
A house and a barn are located on the property, but the Webers did not live on the
property as the buildings required substantial repair.  The Webers failed to pay the

real estate taxes on the property for the years 2012 and 2013. The property was listed for tax sale scheduled for September 12, 2014. The parties stipulated before common pleas that the Clearfield County Tax Claim Bureau had provided the Webers with all the formal due process required pursuant to the Real Estate Tax Sale Law (RETSL).[1]

On Monday, September 8, 2014, Hayes Weber attempted to pay the taxes on the property with a personal check at the Tax Claim Bureau. Mrs. Weber was informed by Matthew Rose, a Tax Claim Bureau clerk, that the Tax Claim Bureau did not accept personal checks the week of the tax sale. Rose and Mrs. Weber then had a discussion regarding whether the taxes could be paid by cash and the last date upon which the taxes could be paid. Rose wrote down the amount owed by the Webers and told Mrs. Weber that the amount would be good through the end of the week. Mrs. Weber did not return to the Tax Claim Bureau until the morning of Friday, September 12, after the tax sale had commenced. As Mrs. Weber was entering the Tax Claim Bureau, she noticed, for the first time, signs stating that cash was not accepted. She immediately went to a bank around the corner and obtained a cashier's check. Mrs. Weber returned to the Tax Claim Bureau and attempted to pay the taxes, but Rose informed her that the property had already been sold to James Keller.[2]

The Webers filed objections and exceptions to the tax sale and the purchaser, James Keller, t/a James Keller Logging, and the Tax Claim Bureau filed responsive pleadings. Common pleas held a hearing on November 26, 2014, and

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101 - 5860.803.

[2] Keller is Mr. Weber's uncle and testified that he purchased the property because it had been in the family for generations and he did not wish to see it leave family control.

ordered the filing of post-trial briefs. Testimony at the November hearing focused upon the conversation between Mrs. Weber and Rose. Mrs. Weber testified that she asked Rose if she could pay with cash or a money order and he responded that she could do so until the end of the week. November 26, 2014 Hearing Notes of Testimony at 8-9; Reproduced Record (R.R.) at 21a-22a. She stated that her understanding of "end of the week" was the "close of business on Friday." *Id*. at 9; R.R. at 22a. Rose testified that he handed Mrs. Weber a slip of paper with the amount due written on it and told her that "it would be payable through the end of the week but it had to be paid by Thursday to keep it from the sale. I told her the amount would be good through the end of the week." *Id*. at 46; R.R. at 59a.

Common pleas held a second hearing to take additional evidence and testimony following the filing of this Court's opinion, *In Re Sale of Vacant Land on Powerhouse Road (Appeal of Clover Ridge Lodge)* (Pa. Cmwlth., No. 486 C.D. 2014, filed Dec. 8, 2014). Rose testified that he worked the entire tax sale and that Mrs. Weber came into the Tax Claim Bureau after he returned from the tax sale. February 17, 2015 Hearing N.T. at 5, 7; R.R. at 84a, 86a. He stated that he looked to see whether Keller had paid for the property by this time, but did not see a check stapled to paperwork relating to the Webers' property. *Id*. at 7-8; R.R. at 86a-87a. Mrs. Weber testified that she arrived at the Tax Claim Bureau with a certified check by 10 a.m. *Id*. at 11-12; R.R. at 90a-91a. Keller testified that he attended the tax sale with his lawyer, successfully bid on the property and immediately left the tax sale to go to the Tax Claim Bureau to pay the purchase price. *Id*. at 22-24; R.R. at 101a-103a. He stated that he waited in line a short time before paying the purchase price around 10 a.m. because he was home by 10:30 a.m. *Id*. at 23-34;

3

R.R. at 102a-103a. He testified that he did not see Mrs. Weber in the Tax Claim Bureau while he was there. *Id.* at 24; R.R. at 103a.

Common pleas sustained the Webers' objections and exceptions to the tax sale. Common pleas relied upon *Clover Ridge Lodge* to conclude that a tax payer is entitled to pay back taxes after a property has been sold at tax sale, but before the purchaser pays the full purchase price. Common pleas credited Rose's testimony that Mrs. Weber tendered payment prior to Keller paying the full purchase price. Common pleas concluded that Keller's testimony was speculative at best. Common pleas also determined that the confusion over the directions regarding payment that Rose gave Mrs. Weber on Monday constituted grounds to overturn the tax sale. This appeal followed.

Keller primarily argues that common pleas erred as a matter of law in relying upon *Clover Ridge Lodge* to conclude that the Webers were permitted to pay their back taxes after the commencement of the tax sale.

Following oral argument on this matter and after careful review of the record, the briefs of the parties and the relevant law, this Court finds that the issue raised by Keller is accurately and sufficiently addressed in the opinion of the Honorable Frederic J. Ammerman, President Judge of the Court of Common Pleas of Clearfield County, filed June 22, 2015, in *Weber v. Clearfield Tax Claim Bureau*, No. 2014-1517-CD. Accordingly, this Court affirms common pleas' order on the basis of that opinion.

                                  _____
                                    **BONNIE BRIGANCE LEADBETTER,**
                                    Judge

4

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Weber and Hayes Y. Weber     :

              :

              :

        v.           :    No. 635 C.D. 2015

              :

Clearfield County Tax Claim Bureau and James Keller t/a James Keller Logging     :

              :

              :

Appeal of: James Keller        :

## O R D E R

AND NOW, this 7th day of January, 2016, the order of the Court of Common Pleas of Clearfield County is hereby AFFIRMED.

 

 

 

_____

**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY, PENNSYLVANIA
## CIVIL DIVISION

MICHAEL J. WEBER and HAYES Y. WEBER

vs.

CLEARFIELD COUNTY TAX CLAIM BUREAU and
JAMES KELLER t/a JAMES KELLER LOGGING

\*     NO. 2014-1517-CD

\*   I hereby certify this to be a true
\*   and attested copy of the original
\*   statement filed in this case.

JUN 22 2015

## OPINION

A TRUE COPY
ATTEST
PROTHONOTARY CLERK

Clearfield County's annual Upset Tax Sale was held on Friday, September 12, 2014, beginning at 9:00 a.m. in the main courtroom. Appellees Michael and Hayes Weber's (hereinafter "Webers" or "Mr. or Mrs. Weber") property located in Huston Township was sold at that sale as a result of unpaid 2012 taxes. Appellant James Keller (hereinafter "Purchaser") was the successful bidder. At some point following his successful bid, Purchaser paid the full Upset Sale price of the 2012 through 2014 taxes, plus costs at the Tax Claim Bureau. On October 2, 2014, Webers filed Objections and Exceptions to the Tax Sale. The Purchaser filed an Answer on October 21, 2014.

Evidentiary hearing was held on November 26, 2014. However, prior to the above-captioned case being decided, the Commonwealth Court reversed a Clearfield County tax sale case. That case was *In Re: Sale of Vacant Land on Powerhouse Road, Bell Township, Clearfield County, Pennsylvania* (appeal of *Clover Ridge Lodge, Inc.*), Commonwealth Court 486 C.D. 2014, Memorandum Opinion, filed December 8, 2014. As a result of the *Clover Ridge Lodge* decision, the Court ordered a second hearing to allow the record to be enlarged and the implications of the *Clover Ridge* case, if any, to be considered. Another evidentiary hearing was held on February 17, 2015. This Court's Order of March 23, 2015 found that Mrs. Weber had appeared at the Tax Assessment Office on the morning of September 12, 2014 with a certified check to pay the tax delinquency in full, prior to the

Tax Claim Bureau receiving payment from the Purchaser. This Court then applied the rationale contained in *Clover Ridge Lodge* to that circumstance and found in favor of Webers, whose Objections were granted. The tax sale of September 12, 2014 to the Purchaser was vacated.

On April 1, 2015, the Purchaser timely filed Post-Trial Motions under Rule of Civil Procedure 227.1. Pursuant to Rule 227.4(b), the Court then had one hundred twenty (120) days in which to rule on the Post-Trial Motion. However, apparently in an abundance of caution to ensure that the thirty (30) day appeal period would not expire, the Purchaser filed a Notice of Appeal on April 15, 2015. Pursuant to this Court's Order, Appellants' Concise Statement was filed May 8, 2015. A hearing had been scheduled for June 3, 2015 to argue the Purchaser's Post-Trial Motion. However, the Purchaser withdrew his Post-Trial Motion by Praecipe filed June 2, 2015, which negated the necessity for the argument on the Post-Trial Motion.

The Purchaser, in his Concise Statement, indicates that the Court erred as a matter of law in determining that the legal authority as set forth in the *Clover Ridge Lodge* case applies to the circumstances of the case at bar. The Purchaser also claims in his Concise Statement that the Trial Court erred in failing to conclude that the Tax Claim Bureau properly refused Mrs. Weber's offered payment of the delinquent taxes on the day of the Upset Sale (Friday, September 12, 2014) and after the Upset Tax Sale had commenced at 9:00 a.m. that morning.

The relevant and controlling portion of the *Clover Ridge Lodge* case is that an "actual sale" of a subject property does not occur until the successful bidder pays the full amount of money agreed to be paid as the sale price under Sections 605-609 of the Tax Sale Law, 72 Pa. C.S.A. Section 102 of the Tax Sale Law defines actual sale as the payment of the full

2

amount of money agreed to be paid by the sale price by the successful bidder or purchaser at upset sale under Sections 605 through 609. 72 Pa. C.S.A. § 5860.102. From the evidence presented at the hearing on February 17, 2015, it would appear to clearly show that Mrs. Weber had appeared at the Tax Claim Bureau with a certified check to pay all of the Appellees tax obligations prior to the Purchaser appearing at the Tax Claim Bureau to make payment following his successful bid at the Upset Sale. As Mrs. Weber's delivery of the cashier's check occurred prior to Purchaser's payment of the sales price, the Tax Claim Bureau should have properly accepted Mrs. Weber's payment and refused to accept payment as later tendered by the Purchaser. The testimony by Tax Claim Bureau employee Matthew Rose that Mrs. Weber appeared with payment on the morning of September 12, 2014 prior to the Tax Claim Bureau receiving payment from the Purchaser was clear and credible. Likewise, the testimony presented at the said hearing from Mrs. Weber was also found to be credible by the Court. Purchaser James Keller's testimony that the purchase money was paid prior to Mrs. Weber tendering was speculative at best.

Additionally, the Court believes the sale may be overturned based upon the confusion over the directions which were provided to Mrs. Weber by a Department Clerk of the Tax Claim Bureau prior to the Tax Sale of September 12, 2014. At the initial hearing held on November 26, 2014, Plaintiff Hayes Weber testified that she initially had appeared at the Tax Claim Bureau on September 8, 2014, with a personal check, prepared to pay the past due taxes on her Huston Township property. At that time, Mrs. Weber was advised by the Tax Claim clerk, Matthew Rose, that a personal check was an unacceptable form of payment during the week preceding the tax sale. After being so informed, Mrs. Weber inquired as to whether or not the Tax Claim Bureau would accept cash or a cashier's check. At that time, Mr. Rose wrote the amount that was due the Tax Claim Bureau on a slip of

3

paper and gave it to Mrs. Weber, stating that this figure would be good until the end of that week. Mrs. Weber then asked for clarification as to whether or not cash or a cashier's check would be an acceptable form of payment. Mrs. Weber had testified that Mr. Rose indicated that such forms of payment would be acceptable. In his testimony of November 26, 2014, Mr. Rose was asked by Defendant's attorney if he recalled Mrs. Weber asking him if she could pay in cash, as was her testimony. Mr. Rose responded that Mrs. Weber may have asked if she could pay in cash; however, he did not recall his response. Mrs. Weber then returned to the Bureau on September 12, 2014, the end of the business week, with cash, but was met with signage on the door of the Tax Claim Bureau that cash was not an acceptable form of payment. Mrs. Weber then obtained a cashier's check from Clearfield Bank & Trust Company[1], returned to the Tax Claim Bureau at approximately 10:00 a.m., but was told that her property had been sold. Her cashier's check was not accepted.

It is clear from the testimony of both the Plaintiff and the representative of the Tax Claim Bureau that the Plaintiff received confusing information as to the type of payment that would be acceptable to the Tax Claim Bureau and as to the last day that payment would be accepted. As a result of her visit, Mrs. Weber was left with the impression that, although a personal check was not an acceptable form of payment for past due taxes, cash was an acceptable form of payment and that payment could be presented any time during the week of September 8th, including the day of the sale. Following what she believed were the instructions, Mrs. Weber returned to the Tax Claim Bureau on September 12th with cash payment, and later with a certified check, for taxes which were due and owing, but was informed that not only her form of payment was unacceptable, but also that, in spite of having an acceptable form of payment, her property had been sold.

---

[1] Clearfield Bank & Trust Co. is located next door to the Courthouse and one building away from the Courthouse Annex where the Tax Claim Bureau is located. County National Bank is located across the street from the Courthouse.

4

It appears then, that three times during the week of September 8, 2014, the Clearfield County Tax Claim Bureau was tendered payment of past due taxes on the Weber property and each time, it refused payment. A personal business check was refused on September 8th as an unacceptable form of payment, even though such a tender would be acceptable as payment by a successful bidder at a subsequent tax sale[2]. Next, a cash payment was turned away because of the Bureau's unflinching policy of not accepting cash because of the apparent concern that such a payment might be misappropriated by those handling the funds. The third attempt at payment, being by cashier's check, was refused in spite of its tender being made prior to the "actual sale" of the subject property as defined by § 102 of the Tax Sale Law. 72 P.S. § 5860.102.

Our Courts have held that the purpose of the tax sale is not to strip the owner of his property, but rather, it is to ensure that the tax on the property is collected. *In Re: Sale of Real Property Situated in Paint Township, Somerset County*, 865 A.2d 1009 (Cmwlth. 2005). As the Tax Claim Bureau had given Mrs. Weber the impression she could pay her taxes up to and including Friday, in cash, payment was property tendered when Mrs. Weber appeared first thing Friday morning with cash payment.

BY THE COURT,

FREDRIC J. AMMERMAN
President Judge

June 22, 2015

---

[2] The Court understands and is not criticizing the policy of the Tax Claim Bureau to refuse a personal check the week of the Upset Sale. As the Upset Sale is held only once per year, accepting a check removes the property from the sale. If the check bounces, the Tax Claim Bureau must wait an entire year before exposing the property to another sale. However, in the interest of allowing property owners to pay their taxes at the final hour, where there is not sufficient time to go next door to the bank and get a cashier's check, a more common sense approach on a case by case basis should be used in circumstances as such where cash is on the table.

5